IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DIANE MARIE KING, #418-706 | * |
| Plaintiff | * |
| v | *  Civil Action No. GLR-16-2671 |
| FELICIA ALSTON,[1] WARDEN MARGARET CHIPPENDALE, and RUDEINE DEMISSIE, | * |
| Defendants | * |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants, Felicia Alston, Warden Margaret Chippendale, and Rudeine Dimissie's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 28). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant Defendants' Motion.[2]

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Defendants' names.

[2] Defendants move for sanctions within their dispositive motion, citing Federal Rule of Civil Procedure 11(b), on the basis that King knew "at the time of filing that her averments [in her Complaint and Amended Complaint] were false and that her claims were frivolous and made for improper purposes." (Defs.' Mot. Summ. J. ¶ 3, ECF No. 28). Rule 11(c)(2) requires a motion for sanctions to be made separately from any other motion. Because Defendants have failed to articulate their sanctions request in a separate Motion, the request contained in their Motion will be denied.

## I. BACKGROUND[3]

On August 19, 2015, King underwent surgery at the University of Maryland Medical System ("UMMS") to correct achalasia, a defect in the esophagus that prevented food from readily entering the stomach, causing vomiting and nausea. (Compl. Supp. at 1, ECF No. 9).[4] Prior to discharge from the hospital, King met with a dietician to discuss the need for a soft, pureed diet, with slow reintroduction of solid foods over the course of eight weeks. (Pl.'s Opp. at 1, ECF No. 32). King alleges that Defendants provided her an improper medical diet. She states hospital personnel insisted she should be fed baby food (not pureed food) for four weeks, (Compl. Supp. at 2), and she was forced to rely on commissary food or risk starvation and malnourishment, (Pl.'s Opp. at 1–2).

King states she "wrote a few" complaints under the Administrative Remedy Procedure ("ARP") process after the kitchen blender broke, making it hard for dietary staff to properly puree her food, but "nothing ever[] came of it." (Id. at 2). She complains that Chippendale refused to provide her with baby food as an alternative to pureed food, (id. at 4–5), and states that Chippendale wrote in favor of granting King early parole because "the prison couldn't or wouldn't do what was needed to be done to feed [her]," (id. at 5). King pleads Chippendale ordered a search of her cell and seizure of commissary food, then prohibited her from ordering commissary food for several

---

[3] Unless otherwise noted, the facts outlined here are uncontroverted and the Court views them in the light most favorable to King.

[4] Page citation in this Memorandum Opinion reflects that assigned by the Court's electronic docket.

months. King states she "starved" during this time, because she only received Ensure for nourishment, a sugary drink that caused weight gain. (Id. at 3).

In a Complaint filed July 22, 2016, King stated that she was not provided a medically-indicated diet while confined at the Maryland Correctional Institution for Women ("MCIW").[5] King initially sought medical release from prison. (Compl. at 3, ECF No. 1). Her Complaint, construed as a civil rights action under 42 U.S.C. § 1983, was later supplemented to include unspecified damages for "negligence, infliction of emotional distress and so much more." (Compl. Supp. at 5).

Following initial screening (ECF No. 5), the case proceeded solely as to Defendants Chippendale, Demissie, and Alston, who have filed the Motion, as supplemented. (ECF Nos. 28 and 31). King filed an Opposition, (ECF No. 32), and Defendants filed a Reply, (ECF No. 33).[6]

## II. DISCUSSION

### A. Standard of Review

#### 1. Motion to Dismiss

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[5] King was released on parole and now resides in Ocean Pines, Maryland. (ECF No. 36).

[6] King filed a surreply. (ECF No. 35). A surreply is permitted when the party submitting it would otherwise be unable to contest any matters raised by the other party for the first time in its reply. See Lewis v. Rumsfeld, 154 F. Supp.2d 56, 61 (D.D.C. 2001). Unless otherwise ordered, a surreply is not permitted. See Local Rule 105.2(a) (D.Md. 2016). Defendants have not raised new matters for the first time in their Reply, and therefore, King's surreply will not be considered.

3

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual

events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

King filed her Amended Complaint pro se. Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

**2.     Conversion to a Motion for Summary Judgment**

In this case, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 28). A motion styled as a motion to dismiss or, in the alternative, for summary judgment implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a

5

Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)). The Court's complete discretion is guided by the United States Court of Appeals for the Fourth Circuit's two-part test for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion. Under this test, the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and "the parties [must] first 'be afforded a reasonable opportunity for discovery.'" Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).

Here, Defendants caption their Motion in the alternative for summary judgment and attach matters beyond King's Complaint for the Court's consideration. (ECF No. 28). In response, King offers her own matters beyond her Complaint. (See Zinkand Decl., ECF No. 30). Thus, the Court will construe Defendants' Motion as a motion for summary judgment.[7]

---

[7] In her Opposition, King states that interrogatories sent to Defendants Chippendale and Alston were ignored. (Pl.'s Opp. at 3, 4, ECF No. 32). King,

## 2. Motion for Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526

---

nonetheless, does not oppose Defendants' Motion on the grounds that she needs more time for discovery. See Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)).

F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.     Analysis**

Prisoners are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a), see also Ross v. Blake, __U.S. __, 136 S.Ct. 1850, 1858 (2016) (inmate "must exhaust available remedies, but need not exhaust unavailable ones."). The statute provides that an action shall not be brought with respect to prison conditions under § 1983 or any other Federal law by a prisoner confined in any

8

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. See 42 U.S.C. § 1997e(a)

This requirement is one of proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly, so the agency addresses the issues on the merits. Woodford v. Ngo, 548 U.S. 81, 93 (2006); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). An administrative remedy is not available if a prisoner, through no fault of her own, was prevented from availing herself of it. Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

Exhaustion is mandatory, Ross, 136 S.Ct. at 1857; Jones v. Bock, 549 U.S. 199, 219 (2007), and a court may not excuse a failure to exhaust. Ross, 136 S. Ct. at 1856 (citing Miller v. French, 530 U.S. 327, 337 (2000)). Exhaustion 1) allows a prison to address complaints about the program it administers before being subjected to suit; 2) reduces litigation to the extent complaints are satisfactorily resolved; and 3) prepares a useful record in the event of litigation. Jones, 549 U.S. at 219. A prisoner's failure to exhaust administrative remedies is an affirmative defense, and a prison bears the burden of proving that the prisoner had remedies available to her that she failed to utilize. Jones, 549 U.S. at 211–12, 216; Moore, 517 F.3d at 725.

In Ross, 136 S. Ct. at 1859, the Supreme Court of the United States identified three kinds of circumstances in which an administrative remedy is unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or

9

consistently unwilling to provide any relief to aggrieved inmates." Id. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process. See Code of Md. Regs. ("COMAR"), tit. 12 §07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 §07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 §07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office. See Md. Corr. Servs., Code Ann. §§10-206, 10-210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B.

Complaints are reviewed preliminarily by the Inmate Grievance Office ("IGO"). See Md. Code Ann., Corr. Servs. §10-207; COMAR, tit. 12 §07.01.06A. If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Code Ann., Corr. Servs. §10-207(b)(1); see COMAR, tit. 12 §07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. Md. Code Ann., Corr. Servs. §10-207(b)(2)(ii). However, if

a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. See Md. Code Ann., Cts. & Jud. Proc. §10-208(c); COMAR tit. 12 §07.01.07-.08. The conduct of such hearings is governed by statute. See Md. Code Ann., Corr. Servs. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the prisoner's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. See Md. Code Ann., Corr. Servs. §10-209(b)–(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted her remedies. See Md. Code Ann., Corr. Servs. §10-210. A prisoner need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. See, e.g., Pozo, 286 F.3d at 1024 (holding that a "prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

"Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies." Kitchen v. Ickes, 116 F.Supp. 3d 613, 624 (D.Md. 2015). Moreover, exhaustion is a precondition to filing suit in federal court. Kitchen, 116 F.Supp. 3d at 625 (citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)) (holding that a prisoner may not exhaust administrative remedies during the pendency of a federal suit).

Here, the undisputed record demonstrates that King did not complete the administrative exhaustion process. (Donnelly Decl. ¶¶ 3–5, ECF No. 28-11). King alleges in her Complaint that she filed several ARPs related to her Complaint's allegations. (Compl. at 7). But rather than offer evidence to show that she completed the process, she offers, in her Opposition, various statements explaining why she did not pursue the administrative process further. (Pl.'s Opp. at 6). Her reason is that, as a general matter, the administrative process is ineffective. Id. All of these assertions do not excuse King's failure to complete the process for at least two reasons.

First, King offers no evidence supporting her assertion that the administrative process is ineffective. King may not rely on statements in her Opposition to respond to Defendants' Motion. Typically, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must respond to the motion by factual affidavit or the like. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir. 1976). Though making verified statements is the equivalent of an opposing affidavit, see Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir. 1979), King did not verify her Opposition. As a result, the Court cannot consider it as an affidavit that responds to Defendants' Motion. And King offers nothing else supporting her assertion that the administrative process is ineffective. Thus, there is no evidence the Court may consider that demonstrates King's assertions about the administrative process.

Second, even if the Court considered King's statements as evidence, the Court would not excuse King's failure to exhaust her administrative remedies. Most of her

assertions are general complaints about how prison officials run the administrative process: that the administrative process is "a big disorganized mess," that there were "11,000 ARP[s] last year with one disorganized officer running it," that King has "[one] unanswered ARP," that Alston asked King to "withdraw" multiple ARPs, that Chippendale told King that "a lot" of her administrative complaints "were meritorious," that prison officials "lost a lot" of ARPs, and that they did not process "most of them." (Pl.'s Opp. at 6). None of these assertions sufficiently establish that prison officials are "unable or consistently unwilling to provide any relief" to King or otherwise made the administrative process unavailable. See Ross, 136 S. Ct. at 1859. And King does not assert that any ARPs related to this case were unanswered, lost, or unprocessed. King's general disagreement with how the prison runs the administrative process does not render the process unavailable, and thus, does not excuse her failure to exhaust administrative remedies. See id. (providing the three grounds for when an administrative remedy is unavailable).

Those assertions aside, King also states that she "was not aware or knew there was such a thing as an IGO hearing" and that the forms related to IGO hearings were "non[-]existent," "no one could find" them, and King "forgot the name" of them. (Pl.'s Opp. at 6). Based on King's on statements, it appears King's own unfamiliarity with the IGO stage of the administrative process prevented her from completing it, instead of the process' unavailability. See Moore, 517 F.3d at 725 (holding that an administrative remedy is unavailable if a prisoner, through no fault of her own, was prevented from availing herself of it). And even if forms related to IGO hearings were unavailable, the

13

fact remains there is no suggestion—or evidence—that King could have reached the IGO stage in any event because King did not appeal any of her ARP complaints. (Donnelly Decl. ¶ 3).

In sum, King failed to complete the administrative exhaustion process. Accordingly, because exhaustion is mandatory and the Court may not excuse a failure to exhaust, Ross, 136 S.Ct. at 1856, 1857, the Court must dismiss her constitutional claims.[8]

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 28) is GRANTED. A separate Order follows.

Entered this 5th day of March, 2018.　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　　　　George L. Russell, III
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[8] The Court declines to consider any implied tort claims, including negligence, medical malpractice, and intentional infliction of emotional distress. District courts may decline to exercise supplemental jurisdiction over a state claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). District courts "enjoy wide latitude" in making this determination. Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). Because King cannot prevail on her constitutional claim—which the Court has original jurisdiction over—this Court declines to exercise supplemental jurisdiction under § 1367(c)(3) and (4) over King's tort claims.